[Civ. No. 8922.   Second Appellate District, Division Two.—May 24, 1935.]

GEORGE H. OSWALD, Appellant, v. PACIFIC ELECTRIC RAILWAY CORPORATION (a Corporation), Respondent.

George D. Blair, J. Gilbert Fall and W. B. Bobbitt for Appellant.

Frank Karr, C. W. Cornell and R. E. Wedekind for Respondent.

CRAIL, J.—The plaintiff appeals from a judgment of nonsuit in an action brought to recover $27,356.34, which had been paid by the plaintiff to the defendant under the following circumstances: The plaintiff owned 100 acres of land. The defendant, a public utility, owned a right of way and main spur line adjoining said land. The plaintiff made application for a spur track connection with the trackage of the defendant in order to serve the plaintiff's land. In April, 1929, a conference was held between the plaintiff and the president of the defendant in regard to the proposed spur track, at which time the president of the defendant stated that a concern known as Reliance Rock Company had put up some of the original money to get the main spur line built there and that, before he could consent to plaintiff's joining the trackage, plaintiff would have to pay a portion of the original cost of the main spur. When asked how much it would cost the president said he did not remember the exact figures but it was around $50,000 that the rock company had paid. Counsel for plaintiff said, ''Well, aren't we legally entitled to join your trackage?'' Whereupon the president put his hand on a map and said, ''You may be legally entitled to join the trackage but before you join it I will take it to the Supreme Court of the United States unless you pay your proportionate amount.'' To which counsel for plaintiff said, ''Well, we do not want any litigation if we can avoid it. We have a valuable piece of property and want to be served.'' The president of defendant replied, ''That is the only condition upon which I can let you join.'' He agreed to send the details of the proportionate cost by letter. On April 26, 1929, the defendant wrote the plaintiff a letter giving the details of the costs. The substance was as follows: ''The cost to the World Rock Co. [the plaintiff] for portion of main line spur from San Bernardino Line to the Reliance plant is as

follows: (a) ⅓ of the ½ interest now owned jointly by the Reliance Rock Company and the Consumers Rock and Gravel Company . . . $12,122.08. (b) ½ of Reliance Rock Company's ½ interest . . . $15,234.26. Cost to World Rock Company, not including cost of proposed spur, $27,356.34.'' In addition to the above, the company asked for ''Cost of spur track off of the Reliance Spur . . . $1,320.''

On June 8, 1929, the plaintiff paid the said sums to the defendant. On June 21, 1929, the defendant sent to the plaintiff an ''Industrial Track Agreement'' to be executed by the plaintiff covering the erection of the spur and the general terms upon which the defendant would serve the plaintiff. This agreement was never executed by the plaintiff. And the spur track connection for the plaintiff was never constructed by the defendant. Prior to commencing the action, plaintiff made demand for the return both of the $1320 item and the $27,356.34 item. The cost of the spur track connection was returned, but the defendant refused to return the cost of the proportionate interest in the right to use the main spur track, the contention of the defendant being that the $27,356.34 was paid by the plaintiff to purchase a right to use the Reliance Rock spur on reasonable terms.

Plaintiff now says it was the theory of the plaintiff's action in the lower court that the plaintiff had a legal right under the law to join the trackage of the railway company and was entitled to service without the payment of any sum whatsoever except the cost of the actual construction of the spur track from the lines of the railway to the property of the plaintiff, and that the demand of the railway company for the $27,356.34 was unlawful and that the action of the defendant as above set forth amounted to fraud, and further that the plaintiff received nothing of value from the defendant for said sum, and further that the railroad violated the Public Utilities Act (Stats. 1915, chap. 91, p. 115, as amended), and that under section 73 (a) of said act the plaintiff had a right to sue and recover the said sum. The complaint was filed May 15, 1932, more than two years after the money was paid by the plaintiff to the defendant. The defendant interposed the defense that the action was barred by the two-year provisions of section 339, subdivision 1 of the Code of Civil Procedure.

If there is any written agreement in this case it must be found in the letters above set forth, but nowhere in any of the letters can be found a written agreement on the part of the defendant to return the money, in any event or upon any condition.

In our opinion this case is similar to the case of *Thomas* v. *Pacific Beach Co.,* 115 Cal. 136 [46 Pac. 899]. In that case the plaintiff sought to recover back the purchase price paid for certain land which the defendant had agreed in writing to convey to the plaintiff upon such payment, but which defendant failed to convey after the payment had been made. The trial court gave judgment for the plaintiff. The question on appeal was whether or not the action was barred by the two year statute of limitations. The Supreme Court said, "There is in this contract no express stipulation or agreement to do the thing which the plaintiff seeks to enforce. . . . Actions of the character of the one at bar have been uniformly treated as actions resting in implied *assumpsit,* as for money had and received (citing cases) ; and, under the facts alleged, we think this case must be so regarded and as governed by the two years' limitation prescribed by subdivision 1 of section 339". This case was cited with approval in the case of *Scrivner* v. *Woodward,* 139 Cal. 314 [73 Pac. 863].

The plaintiff relies largely upon the Public Utilities Act which provides (section 25[a] and 25[b]) that every railroad corporation upon application of a contemplated shipper for a connection between its railroad and any contemplated private track shall make such connection and provide such switches and tracks as may be necessary. This, however, is not an absolute or unqualified right. The plaintiff overlooks certain provisions of the act. One of the conditions of said right which is incorporated in the very sentence which creates the right reads as follows: "provided . . . that the business which may reasonably be expected to be received by such railroad corporation over such connection is sufficient to justify the expense of such connection to such railroad corporation." Said act further provides (section 39[a]) that "Whenever the commission after a hearing had upon its own motion or upon complaint, shall find that application has been made by any corporation or person to a railroad corporation for a connection or spur as provided in section twenty-five of this act, and that the railroad corporation has

refused to provide such connection or spur and that the applicant is entitled to have the same provided for him under said section twenty-five, the commission shall make an order requiring the providing of such connection or spur and the maintenance and use of the same *upon reasonable terms which the commission shall have the power to prescribe.*" One of such "reasonable terms" might well be (quoting the language of the same section) "upon payment to the party or parties incurring the primary expense of such private track, tracks or railroad, or the connection therewith or of such spur, of a reasonable proportion of the cost thereof". The plaintiff never filed a complaint with the railroad commission. What he did do was to negotiate the reasonable proportion of the cost of the Reliance Rock and spur to be borne by him. The letters state exactly what he was paying for.

The plaintiff next contends that his cause of action was based on fraud. If so, he was not skillful in making clear that fact in his complaint. The complaint is entitled "Breach of Contract", and there is not the slightest suggestion in it that it was based on fraud. The word "fraud" is not used in the complaint. And the defendant contends that the first knowledge which it received that the plaintiff made such contention came to the defendant in appellant's opening brief. The essential averments required to state a cause of action based on fraud are lacking in the complaint, and it is equally true that the plaintiff wholly failed to prove a cause of action for fraud.

It is the final contention of the plaintiff that his cause of action is based on a "liability created by statute", that is, the said Public Utilities Act. The significance of this contention arises from the fact that section 338, subdivision 1, of the Code of Civil Procedure provides that an action on a liability created by statute may be brought within three years. It is obvious from what we have said that the plaintiff's cause of action was not based on any such liability but was based upon the breach of an implied contract and an action resting in implied *assumpsit* as for money had and received.

Judgment affirmed.

Stephens, P. J., and Fricke, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 13, 1935, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 22, 1935.